UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAI LEE,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. 1:22-cv-01321-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Docs. 15, 18, 19) |

Plaintiff Mai Lee ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 15, 18, 19). Upon review of the Administrative Record (Doc. 11-1, "AR") and the parties' briefs, the Court finds and rules as follows.

**I.    BACKGROUND**

   **A. Administrative Proceedings and ALJ's Decision**

Plaintiff filed a Title II application for disability insurance benefits ("DIB") on May 14,

---

[1] Following the parties' election to consent to magistrate judge jurisdiction for all purposes, the undersigned was authorized to preside over all proceedings effective November 14, 2022, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 10).

2020, and a Title XVI application for supplemental security income ("SSI") on June 8, 2020. (AR 170-88). Plaintiff's applications for both DIB and SSI were denied initially, and Plaintiff sought reconsideration of the SSI denial. (AR 126-38). Plaintiff's SSI application was again denied upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 139-45). On August 12, 2021, ALJ Linda Crovella held a hearing, during which Plaintiff, represented by counsel and with the benefit of an interpreter, and an independent vocational expert testified. (AR 34-56). The ALJ issued her decision on September 27, 2021, finding Plaintiff not disabled. (AR 15-29). On August 12, 2022, the Appeals Council declined Plaintiff's request for review. (AR 1-3).

In her decision, the ALJ engaged in the five-step sequential evaluation process set forth by the Social Security Administration. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 13, 2020, the application date. (AR 19). At step two, the ALJ determined that Plaintiff had the following severe impairments: "asthma and depressive disorder." (AR 19). At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20-21).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), with the exception that she could frequently climb ramps and stairs and never climb ladders, ropes, and scaffolds. (AR 21). Additionally, Plaintiff could frequently balance, stoop, kneel, crouch, and crawl, but could not tolerate even moderate exposure to pulmonary irritants. (AR 21). She could understand, remember, and carry out simple routine tasks for two-hour periods with regular breaks to complete an 8-hour workday; respond appropriately to routine changes in the work setting that occur no more than occasionally; make simple workplace decisions; and interact with the public and coworkers occasionally. (AR 21). In formulating the RFC, the ALJ considered Plaintiff's own statements and testimony regarding her impairments, statements from Plaintiff's daughter, and the medical record, including the opinion of psychological consultative examiner Dr. L. Faurbo. (AR 22-28).

At step four, the ALJ found that Plaintiff had no past relevant work. (AR 28). At step five, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in the national economy, such as laundry worker and counter supply worker. (AR 28-29). Accordingly, the ALJ found Plaintiff had not been under a disability from May 13, 2020, the application date, through the date of decision. (AR 29).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (citation modified). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*.

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing

3

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III. ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her SSI application. (Doc. 1). Plaintiff raises a single issue: "The ALJ erred by rejecting the opinion of examining physician, Dr. Faurbo, without proper consideration of the supportability

consistency of the opinion with the record, erroneously relying upon her own lay interpretation of the medical data." (Doc. 15 at 2).

**A. Legal Standard**

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's current regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under the regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 416.920c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from medical source individually"); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 416.920c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

1  from other medical sources and nonmedical sources in the claim, the more persuasive the medical
2  opinion(s) … will be." 20 C.F.R. § 416.920c(c)(2).

3        The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a
4  prior administrative finding based on these two factors.  20 C.F.R. § 416.920c(b)(2).  The ALJ
5  "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except
6  when deciding among differing yet equally persuasive opinions or findings on the same issue.  20
7  C.F.R. § 415.920c(b)(2)-(3).  Further, the ALJ is "not required to articulate how [he] considered
8  evidence from nonmedical sources." 20 C.F.R. § 416.920c(d).  Nonetheless, the Court must
9  determine whether the ALJ adequately explained how he considered the supportability and
10 consistency factors relative to medical opinions and whether the reasons were free from legal
11 error and supported by substantial evidence.  *Woods*, 32 F.4th at 792-93.

12       **B.  Dr. Faurbo's Opinion and ALJ's Consideration**

13       On September 28, 2020, Dr. Faurbo conducted a comprehensive mental status evaluation
14 of Plaintiff.  (AR 318).  Dr. Faurbo opined that Plaintiff was markedly limited in her abilities to
15 understand, remember, and perform complex written and oral instructions; maintain regular
16 attendance in the workplace; perform work activities on a consistent basis and without special or
17 additional supervision; complete a normal workday or workweek without interruptions resulting
18 from her psychiatric condition; interact with coworkers and the public; and deal with the usual
19 stress encountered in competitive work environments.  (AR 321-22).  He also opined that Plaintiff
20 was moderately limited in her abilities to understand, remember, and perform simple written and
21 oral instructions, and accept instructions from supervisors.  (AR 321-22).  Dr. Faurbo noted that
22 Plaintiff's limitations were "due to cognitive and functional deficits associated with mood
23 disorder," Plaintiff "may benefit from continuing counseling and continuing psychiatric
24 medication to address and manage current mental health symptoms," and Plaintiff's overall
25 prognosis was "fair."  (AR 322).

26       The ALJ explained her treatment of Dr. Faurbo's opinion as follows:

27           Although Dr. Faurbo had the opportunity to examine the claimant
          and consider her history, the evidence of record, including
28           treatment notes that do not contain objective mental status

>examination abnormalities to support the serious limitations noted by Dr. Faurbo, does not support the opinion. Dr. Faurbo's assessment is not fully supported by the medical evidence of record and minimal support was provided for the specified marked limitations. The opinion is not consistent with mental status evaluation results. Treatment notes indicate that the claimant did not experience marked limitations from her mental health symptoms. Moreover, the opinion is not fully supported by the overall evidence of record discussed above, including treatment notes and mental status examinations showing limited abnormalities, and treatment notes showing the claimant's mental health impairments were well controlled when she was compliant with use of prescribed medication. Additionally, the assessment regarding the claimant's functioning is somewhat inconsistent with the claimant's testimony and reported activities of daily living discussed above, as well as the claimant's conservative mental health treatment during the period at issue. Further, the evaluation regarding the claimant's functioning is inconsistent with the medical evidence of record, and disproportionate to examination findings and results specifically, limitations regarding the claimant's ability to understand, remember, and perform complex written and oral instructions, maintain regular attendance in the workplace, perform work activities on a consistent basis, perform work activities without special or additional supervision, complete a normal workday or workweek without interruptions, interact with others, and the ability to deal with the usual stresses encountered in a competitive work environment. Nevertheless, the above residual functional capacity accounts for the claimant's limited attention, concentration, and making performance adjustments. I find this medical opinion less persuasive.

(AR 27-28).

### C. Arguments and Analysis

Plaintiff argues the ALJ failed to properly consider the supportability and consistency factors in analyzing Dr. Faurbo's opinion. (Doc. 15 at 6). Plaintiff argues that while the ALJ indicated the opinion was not supported by the medical records, "the ALJ's supportability explanation is conclusory and not supported by substantial evidence" because the ALJ failed to identify or discuss any records in support of his conclusion. (*Id.* at 9). Additionally, Plaintiff argues "the ALJ's cherry-picked references are not representative of the record as a whole." (*Id.*). As to consistency, Plaintiff argues "the ALJ failed to undertake an analysis of other medical record evidence or identify what medical evidence is inconsistent with Dr. Faurbo's opinion." (*Id.* at 11). Thus, Plaintiff's position is that "[t]he ALJ's failure to properly articulate how the consistency and supportability of the opinion was considered requires remand for proper

consideration of Plaintiff's impairments and resulting limitations." (*Id.*). Additionally, Plaintiff argues that "[b]y rejecting the only medical source opinions pertaining to [her] mental functioning during the adjudicated period, the ALJ erred by relying on her own lay estimation of Plaintiff's functioning based upon her own interpretation of the raw clinical data." (*Id.* at 13).

In response, Defendant argues the ALJ properly evaluated the opinion and found it less persuasive because it was not well-supported, and was inconsistent with the overall record, including prior administrative medical findings that Plaintiff was not precluded from all work. (Doc. 18 at 8). Defendant asserts the ALJ correctly "noted that Dr. Faurbo provided minimal support (i.e., in the form of explanations or clinical findings) for marked limitations in mental functioning" and "the overall record, including mental status evaluations by other providers, inconsistencies in the record, such as failure to comply with treatment, and daily activities, were inconsistent with marked mental limitations." (*Id.* at 9). Defendant also argues that "Plaintiff's contention that the ALJ did not rely on any medical opinion in crafting the RFC is without merit" because the "prior administrative findings were consistent with the RFC finding, and more importantly, demonstrated that Plaintiff was not precluded from all work." (*Id.* at 10).

Plaintiff replies that the ALJ failed to explain why Dr. Faurbo's observations of Plaintiff during her examination "were not supportive of his opinion." (Doc. 19 at 2). Additionally, Plaintiff argues "the ALJ's vague, unsupported assertion [that the opinion was inconsistent with the record] fails to meet the substantial evidence standard, and Defendant's post-hoc analysis of the record cannot substitute for an appropriate rationale from the ALJ." (*Id.*).

The Court concludes the ALJ adequately explained her consideration of the supportability and consistency factors in finding Dr. Faurbo's opinion "less persuasive" and substantial evidence supports this conclusion. Looking first to supportability, the ALJ explained that Dr. Faurbo's opinion was "not fully supported by the medical evidence of record and minimal support was provided for the specified marked limitations." (AR 27). While the opinion contains Dr. Faurbo's observations of Plaintiff and Plaintiff's reports regarding her history and impairments, Dr. Faurbo set forth his opinion regarding Plaintiff's various limitations without linking these limitations to any of his observations. (*See* AR 321-22). The only explanation provided was that

the limitations were "due to cognitive and functional deficits associated with a mood disorder." (AR 321-22). This minimal explanation is a sufficient reason to find the opinion unsupported. *See Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion *by explaining the relevant objective medical evidence*.") (emphasis added).

As to consistency, the ALJ explained that Dr. Faurbo's opinion was "not fully supported by the overall evidence of record …, including treatment notes and mental status examinations showing limited abnormalities, and treatment notes showing the claimant's mental health impairments were well controlled when she was compliant with use of prescribed medication." (AR 27). While the records cited by the ALJ in discussing the medical records include Plaintiff's subjective reports to providers that she struggled with depression, they also include her statement to providers that she was "doing okay" and her denial of hallucinations; reports that Plaintiff had restricted mood/affect but normal appearance, behavior, and cognition; and the providers' observations of Plaintiff as being appropriately groomed with intact memory/cognition and rational thought process. (AR 396-97, 416-17, 447). The records also support the ALJ's conclusion that Plaintiff was not fully compliant with her treatment. (AR 417 ("Pt notes she is not fully compliant with her venlafaxine."); AR 427-28, 430, 432, 434-35, 439, 442-43, 446, 448, 462-66 (Plaintiff failed to answer calls from counselor)). Although Plaintiff points to evidence that could support an alternate conclusion, she is essentially asking the Court to reweigh the evidence in her favor. However, "[w]hen the evidence can rationally be interpreted in more than one way, the court must uphold the ALJ's decision." *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021) (citation modified).

To the extent Plaintiff challenges the RFC as not being based on any medical opinion, such argument is contradicted by the record. The ALJ indicated that although the State agency consultants concluded Plaintiff did not have severe mental health impairments, they did include mental limitations, which the ALJ found consistent with and supported by the record. (AR 26). The ALJ's ultimate RFC limiting Plaintiff to "simple routine tasks for two-hour periods with regular breaks to complete an eight-hour workday" with routine changes in the work setting that

occur no more than occasionally and only simple decisions and occasional contact with the public and coworkers is consistent with the State agency opined limitations to "limited public contact and simple routine tasks with simple work routine and simple work-related decisions." (AR 26). The ALJ simply included additional limitations to account for Plaintiff's "limited attention, concentration, and making performance adjustments." (AR 27-28).

Ultimately, substantial evidence supports the ALJ's conclusion that Dr. Faurbo's opinion was unsupported and inconsistent with the record such that the ALJ did not err in finding the opinion less persuasive when assigning the RFC.

### IV.     CONCLUSION AND ORDER

For the reasons stated above, the Court ORDERS as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 15) is DENIED;
2. The decision of the Commissioner is affirmed; and
3. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **September 23, 2025**                    _____
                                                                    UNITED STATES MAGISTRATE JUDGE